IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIFFANY AGA, ANDREA BRICHANT, )
WESSELLS and KATE TAYLOR, )
)
   *Plaintiffs*, )
) No.3:03-0894
v. ) JUDGE HAYNES
)
FAIRFIELD RESORTS, )
)
   *Defendant*. )

## **MEMORANDUM**

Before the Court is the Plaintiffs' motion to strike the attorney's lien filed by the law firm of Wiggins, Childs Quinn and Pantazis, LLC ("WCQP"), their former counsel in this action. (Docket Entry No. 138). Plaintiffs contend that WCQP waived any right to a lien by their failure to file a timely notice of a lien in this action and to advise Plaintiffs or their current counsel of its lien. Plaintiffs also note that WCQP was aware of the Plaintiffs' settlement talks that resulted in a settlement of this action, but WCQP did not inform Plaintiffs or their counsel of any assertion of its attorney lien. In its response, WCQP asserts that lawyers in its firm participated in the earlier stages of this litigation, including filing an amended complaint, preparing discovery requests, and preparing the case management and protective orders. WCQP also asserts that under Tennessee law, prior notice of its lien is not required and in any event, WCQP filed a timely lien and prior to the settlement in this action.

### A. Analysis of the Record

David Stanford, then an attorney with WCQP at the time, and Grant E. Morris, as co-counsel under an agreement with WCQP filed this action for Plaintiff, Tiffany Aga, against Fairfield Resorts, Inc., and Cendant Corporation. At the time of the initial case management conference, Temple D.

Trueblood and Ann C. Robertson of WCQP made their initial appearances. (Docket Entry Nos. 24, 25, 26 and 27). Robertson and Trueblood prepared and submitted a revised case management order and filed a second amended complaint clarifying the Title VII claims of the Plaintiffs by adding necessary language for the administrative "piggy backing" of claims of Plaintiffs Brichant and Taylor, and adding three state law claims which had not be previously asserted by Mr. Morris. (Docket Entry No. 37). WCQP asserts that Robertson and Trueblood propounded and conducted paper discovery, including Plaintiffs' first requests for production of documents and Plaintiff's supplemental responses to Defendant Fairfield Resorts, Inc.'s first request for production of documents. According to WCQP, Robertson and Trueblood also drafted a protective order and Plaintiffs' initial supplemental disclosures to the Defendants.

On April 19, 2004, Robertson and Trueblood, filed a motion to withdraw as counsel of record for Plaintiff Aga that was granted. (Docket Entry Nos.36 and 38). On April 27, 2004, Grant Morris also filed a motion to withdraw as counsel for Plaintiff Aga, which the Court granted on April 28, 2004. (Docket Entry Nos. 39 and 40). Plaintiff Aga did not oppose these motions. On July 8, 2004, Robertson and Trueblood, filed a motion to withdraw as counsel for Plaintiffs Andrea Wessells and Katie Taylor.[1] (Docket Entry No. 44). Plaintiffs Wessells and Taylor did not oppose this motion that was granted on July 9, 2004. (Docket Entry No. 45). According to docket sheet, Robertson and Trueblood were counsel of record in this action for almost six months for one or more of the Plaintiffs.

From that point in the litigation, the Plaintiffs were represented by Morris and local counsel.

---

[1] The Motion to Withdraw was precipitated by the discovery by Ms. Robertson and Ms. Trueblood that Grant Morris was talking to present and former managers of the Defendant, which Ms. Robertson and Ms. Trueblood viewed as ethically improper.

2

The Court granted Morris's pro hac vice motion on March 3, 2004 and on September 23, 2004, David Sanford and his firm of Sanford, Wittles & Heisler, LLP, filed a notice of appearance for Plaintiffs Wessells and Taylor. (Docket Entry No. 53) that the Court granted. (Docket Entry No. 55). Sanford also filed a motion to reconsider the Court's earlier Order granting his motion to withdraw as counsel for Plaintiff Aga that was granted. (Docket Entry Nos. 116 and 117).

As to WCQP's work in this action. Plaintiffs respond that their current counsel filed another amended complaint with four new claims. In addition, Plaintiffs' current counsel took and defended thirty-three depositions in four states, retained an expert witness who was deposed; conducted extensive written discovery; exchanged and reviewed over 6,000 pages of documents; and filed a memorandum in opposition to Defendant's motion for summary judgment.

On March 21, 2005, the parties filed a joint mediation report on this and a related action (Docket Entry No. 130) that stated that "no settlement had been reached" in the Aga and Wilson actions as the parties were unable to agree upon some undefined terms and Plaintiffs' counsel lacked confidence that the actions would settle and moved to set a trial date that the Court granted. (Docket Entry Nos. 131 and 133). On March 25, 2005, WCQP filed its notice of attorney's lien.(Docket Entry No. 132). WCQP's notice does not state any amount for its lien and WCQP has not presented any proof of the amount of its lien nor file a listing of the time expended by its attorneys, even after Plaintiffs cited this omission..

Plaintiffs' counsel insists that the March 21, 2005, joint mediation report actually meant that the Wilson, et al. v. Fairfield Resorts, Inc., et al, action had not settled. Yet, Plaintiffs' counsel moved to set the Aga action for trial. Plaintiffs' affidavits that the Aga action settled, do not provide a date for that settlement nor is the settlement agreement provided. In these circumstances,

3

the Court declines to find that the financial terms of the Aga settlement had been concluded prior to WCQP's filing of its attorney lien in this action.

## B. Conclusions of Law

Given that this action was based upon federal law, notwithstanding the state law issues on the attorney's lien, the Court has supplemental jurisdiction[2] to decide this motion, Kalyawongsa v. Moffett, 105 F.3d 283, 288-89 (6th Cir. 1997) and to "determine the amount of the lien and reduce it to judgment." Id. at 288. The lawyers asserting a lien bear the burden to prove the lien to be reasonable. Id. Waiver of the attorney's lien can occur by the lawyer's failing to discharge his or her duties to the client. Starks v. Browning, 20 S.W.3d 645, 648 (Tenn. Ct. App. 1999).

WCQP's notice of their attorney lien cited Tenn. Code Ann. §§23-2-102 and 23-2-103 that provide as follows:

> **23-2-102. Lien on right of action**–Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of that suit.
>
> **23-2-103. Lien on action begun before employment.**– Any attorney or solicitor who is employed to prosecute a suit that has already been brought in any court of record shall have a lien upon the plaintiff's right of action from the date of the attorney's or solicitor's employment in the case; provided, that the record of the case shall first be made to show such employment by notice upon the rule docket of such court, or a written memorandum filed with the papers in the case, or by noticed served upon the defendant in the case.

Under Tennessee law, these statutory liens are "mutually exclusive" because the former applies to an attorney who files the legal action and the latter to "attorneys hired after a suit has already been

---

[2]If the underlying action were based upon state law, "the trial court may exert jurisdiction where the money or property that is the subject of the lien 'comes within the control of the court in the case in which the services were rendered.'" Schmitt v. Smith, 118 S.W.3d 348, 354 (Tenn. 2003)( quoting Starks v. Browning, 20 S.W.3d 645, 653 (Tenn. Ct. App. 1999)).

4

brought." Schmitt v. Smith 118 S.W.3d 348, 352 (Tenn. 2003). Yet, "the analysis under both of the statutes is the same." Id. at 352 (citation omitted). Here, because a member of WCQP filed the original complaint, the Court deems its lien to fall under Tenn. Code Ann. §23-2-102.

Tennessee law recognizes both statutory and common law liens Starks, 20 S.W.3d at 650-51 (citing judicial decisions and Tenn. Code Ann. § 23-2-102). The statutory lien "attaches to any proceeding flowing from a judgment as long as the lawyer worked to secure that judgment for the client." Id. at 651. The common law lien, i.e., the "possessory lien" arises from the client's property in counsel's possession and the "charging lien" is for "services in a particular action secured by the judgment or recovery in that action . . . as long as the lawyer worked to secure that judgment for the client." Id. at 650-51. Under the facts here, the possessory lien is inapplicable. The statutory lien or the "charging lien" is applicable here given that the record reflects that attorneys from WCQP did some work that ultimately led to the settlement in this action, but the extent of that work is not defined.

Plaintiffs' argument that WCQP forfeited its lien by abandoning Plaintiffs in this action and failing to provide Plaintiffs adequate notice of WCQP's intent to assert its lien rights before the Plaintiffs agreed to settle their claims, is unsupported by the facts. In addition, WCQP's reliance on Starks , that such notice is unnecessary because clients should know that an attorney expects to be paid, is well-founded. 20 S.W.3d at 651.

Yet, under Starks, an attorney lien can be "waived or forfeited" "if a lawyer fails to represent his or her client's interest faithfully, honestly and consistently or fails to discharge his or her duties with utmost faith." Id. Under Kalyawongsa, the Court is also to "determine the amount of the lien and reduce it to judgment." 105 F.3d at 288. Although WCQP provided Plaintiffs with an amount

5

of its lien, WCQP has failed to provide the Court with proof specifying the actual hours worked and the costs incurred for the <u>Aga</u> action. Without a particularized showing to justify its lien, the Court resorts to the quantum merit approach. <u>Adams v. Mellen</u>, 618 S.W.2d 485, 488-89 (Tenn. Ct. App. 1981).

Given the limited period of WCQP's counsel appearance in this action of approximately two months before its attorneys moved to withdraw and their description of their work, the Court awards WCQP attorney fees of $5,000. WCQP had failed to carry its burden to establish its lien for any additional amount.

For these reason, Plaintiff's motion to strike WCQP's attorney's lien should be denied and the Court awards WCQP attorney fees of $5,000 to be paid the Plaintiffs. The Court will enter an Order discharging WCQP's attorney lien in this action upon Plaintiffs' payment thereof.

An appropriate Order is filed herewith.

**ENTERED** this the ___7th___ day of June, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge